<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                      :
THOMAS MANELLA,                       :
                                      :   Civ. No. 04-4934 (WGB)
        Plaintiff,                    :
                                      :
v.                                    :      O P I N I O N
                                      :
JO ANNE B. BARNHART,                  :
COMMISSIONER OF SOCIAL SECURITY,      :
                                      :
        Defendant.                    :
                                      :
_____ :

<u>APPEARANCES:</u>

Robert A. Skoblar, Esq.
53 North Dean Street
Englewood, New Jersey 07631
     Attorney for Plaintiff

Christopher J. Christie
United States Attorney
By: Thomasina DiGrigoli
Special Assistant U.S. Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
     Attorney for Defendant

-1-

BASSLER, SENIOR DISTRICT JUDGE:

Plaintiff, Thomas Manella, ("Manella"), age 52, brings this action seeking judicial review of the Social Security Administration's denial of his claim for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.216(i) and 42 U.S.C. § 423.223  of the Social Security Act.[1]  For the reasons set forth in this Opinion, the Commissioner's decision is **affirmed.**

I.  BACKGROUND

For approximately thirty (30) years, Manella, a high school graduate with some college education, was a working partner[2] in a ceramic tile distributorship, performing mainly sales, order taking, order processing, customer service, and delivery duties. His job was physical in nature and required him to be on his feet ten (10) hours per day and lift and carry weights of up to seventy-five (75) pounds.  It was the only job, outside of the military, that Manella ever held.

Manella's medical background is substantial.  In June 1999, he was hospitalized for acute chest pain; the diagnosis was acute myocardial   infarction,   coronary   artery   disease,   nicotine

_____

[1]Manella is represented currently by Robert A. Skoblar, Esq.

[2]Manella held a twenty-five percent (25%) share of the business.

dependence,[3] and hyperlipidemia.  He was treated with emergency cardiac catheterization, coronary angioplasty, and by-pass surgery on five (5) coronary arteries; post-surgery, he was prescribed various medications and a low cholesterol diet, as well as a gradually increasing regimen of physical activity.

Although he attempted to return to his job after surgery, he found that he could no longer perform the physical duties of his position.  Manella's shares in the business were bought out by his partners and he was replaced.  He has not worked since.

In August 1999, following an arrest for gun possession, Manella saw a psychiatrist one (1) time.  Manella told the psychiatrist that, after his surgery, he has become "very angry" and he admits that he has been angry "for a long time."  He also told the psychiatrist that he was depressed, although he could sleep for a full eight hours; he had "great" mornings; he could have "a good time;" his appetite was good; and his libido was "very good."

Follow up stress tests conducted in September 1999 were negative, showing no ST changes and no exercise induced wall motion abnormalities, with normal ventricular systolic response to exercise.

_____

[3] Manella admits to smoking for thirty-five (35) years anywhere from 2.5 to 3 packs of unfiltered cigarettes each day, although he reported to some medical providers that he smoked as many as 5 packs per day.

Beginning in October 1999, Manella was seen every six months by a doctor of osteopathy.  In January 2000, this doctor reported that Manella was prevented from returning to work as a result of complications and medical problems from his June 1999 by-pass surgery.  In October 2000, this doctor, again, reported that Manella was "medically unable to work at this time" because of coronary artery bypass surgery and new onset seizure disorder.

A pulmonary examination in December 1999 revealed that Manella's chest and lungs were clear with normal lung volume, and his heart was normal with normal sounds and regular rhythm; his pulmonary function test, though, suggested obstructive disease of the small airways.

A heavy drinker, Manella admitted himself for detoxification for alcohol and sedative dependence to Arms Acres (Carmel, New York) from March 3, 2000 through March 9, 2000.  In the intake assessment, Manella admitted to drinking alcohol since the age of 12 and, currently, to drinking four to five martinis each day, in addition to consuming some wine and beer weekly.  The prognosis upon discharge was indicated as "guarded."

Another stress echocardiography test was performed in May 2000.  Although the test was terminated because Manella became short of breath,[4] the results, again, were negative, showing no ST

_____

[4] Manella achieved 92 percent (%) of his predicted maximal heart rate in 4:07 minutes.

changes and no exercise induced wall motion abnormalities, with normal ventricular systolic response to exercise. In the opinion of the attending physician, Manella's response was normal and his capacity for exercise was "good."

Beginning in June 2000, Manella experienced loss of consciousness on two (2) occasions, which he characterized as "seizures." Following the first episode, he was given a Holter test in July 2000, the results of which indicated a normal sinus rhythm with no evidence of heart blockage, no runs, and no symptoms. Manella was also examined in July 2000 by a neurologist who found normal neurological function and normal EEG test results. In the neurologist's opinion, Manella's seizures may have been caused by alcohol withdrawal. Although an appointment was made for Manella to have an MRI on his head to complete the neurological work up, Manella canceled the appointment.

In October 2000, at the direction of the Social Security Administration, a medical doctor conducted a consultative physical evaluation of Manella, the results of which were normal, with the exception of poor R wave progression of V1-V3.

Between October 2000 and March 2001, Manella underwent a number of mental status evaluations by four different providers of psychological services. In the first assessment in October 2000, Manella was assessed as having adjustment disorder with depressed mood secondary to environmental stressors including physical

problems and personality disorder; the report state that Manella said he had refrained from alcohol consumption for seven months.

In a second assessment in November 2000, Manella was assessed as "not significantly limited" in eleven of twenty functional capabilities categories, and "moderately limited" in the remaining nine categories, with a diagnosis of adjustment disorder and personality disorder.  The finding was that Manella had moderate restrictions in daily living activities; moderate difficulties in social functioning; moderate difficulties in maintaining concentration, persistence or pace; and that Manella had experienced "one or two" episodes of decompensation of extended duration.  This report stated that Manella admitted to using alcohol again and was consuming four drinks per day.

Manella was referred for a third assessment after an episode of driving while intoxicated and was seen in weekly outpatient sessions between November 1, 2000 to February 14, 2001.  This time, the finding was that Manella was able to follow instructions; sustain concentration and focus long enough to complete assigned tasks; manage his own money; and, use public transportation.  This report stated that Manella ceased substance abuse during these outpatient sessions and, when he was not using alcohol, his ability to reason was adequate.

In March 2001, a psychological consultant for the State of New Jersey reviewed the medical evidence and evaluated it under the

-6-

Listing of Impairments, sections 12.04 and 12.09. The determination was that Manella suffered from mood disorder and alcohol abuse which resulted in mild restrictions on daily living activities; moderate difficulties in social functioning; and moderate difficulties in maintaining concentration, persistence, or pace. It was reported that Manella was "not significantly limited" in eleven of twenty functional capabilities categories; "moderately limited" in eight categories; and, "markedly" limited in his ability to maintain attention and concentration for extended periods.

At the direction of his attorney in November 2001, Manella was examined by Craig Piper, M.D., who determined that Manella suffered from chronic obstructive pulmonary disease; chronic bronchitis; small airway disease; seizure disorder; and anxiety. In Dr. Piper's opinion, Manella was "permanently and totally disabled overall" from the combined effects of his medical conditions. In Dr. Piper's opinion, Manella was "unable to engage in any substantial, gainful activity." In a follow up letter to the ALJ, Dr. Piper clarified that he saw Manella one time only for worker compensation insurance purposes, and that he rendered no treatment to Manella.

Finally, in a letter dated January 2003, Dr. Neha Majmudar, Hackensack Outpatient Clinic of the Department of Veteran Affairs, explained that Manella was a patient at the clinic for three years

and under his care for the last one and one half years. The clinic records report that Dr. Majmudar diagnosed Manella with coronary artery disease of five vessels; hypertension; hypercholesterol; seizure disorder; depression; and chronic alcoholism, but that Manella was in "no acute distress" from any of these.  The clinic records note that Manella is a "current smoker" of two to three packs per day and actively engaged in "heavy alcohol abuse," drinking six bottles of vodka per week, at the rate of eleven drinks per day, with "alcohol on [his] breath."  The record also reflects that Manella refused Dr. Majmudar's referral to the mental health unit.

APPLICATION BACKGROUND:  Manella filed an application for a period of disability and DIB on September 7, 2000.  The application was denied, and Manella requested reconsideration.  When reconsideration was denied, he requested a hearing before an Administrative Law Judge ("ALJ").  The hearing was held on March 21, 2002, and, in a determination issued May 7, 2002, the ALJ found that Manella was not disabled.  Manella requested a review of the ALJ's decision.  The Appeals Council granted the review and remanded the case to the ALJ to obtain additional evidence to clarify Manella's pulmonary impairment.[5]   Further, the Appeals

---

[5] The Appeals Board sought clarification because the November 2001 testing was not done in accordance with guidelines specified in section 3.00(E) of the Listing of Impairments.  At the time, the Appeals Council was unaware that the pulmonary testing done by Dr. Piper was for worker compensation insurance

-8-

Council authorized the ALJ to "obtain evidence from a vocational expert to clarify the effect of the assessed limitations on [Manella's] occupational base," if the expanded record warranted it.  Finally, the Appeals Board directed the ALJ to "[c]onduct any necessary further proceedings required to determine whether alcoholism is a contributing factor material to a finding of disability."

The ALJ conducted the remand hearing on February 25, 2003. Manella, Manella's fiancé, and Manella's attorney were present and spoke on the record.  Based on the expanded record, the ALJ determined that Manella was not disabled and issued his decision on April 7, 2003, specifically finding:

1.   The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of the decision.

2.   The claimant has not engaged in substantial gainful activity since the alleged onset of disability.  Work activity for one week in August 1999, is considered unsuccessful work attempt.

3.   The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(b).

4.   These medically determinable impairments do not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

5.   The claimant's subjective complaints of symptoms and limitation are not totally credible.

---

purposes and not for social security disability purposes.

6.   I have carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 C.F.R. § 404.1527).

7.   The claimant had, at least through August 2002, the residual functional capacity for light work involving no greater than simple tasks, not involving high-stress situations, and an environment free of excessive pulmonary irritants.

8.   The claimant is unable to perform any of his past relevant work (20 C.F.R. § 404.1565).

9.   The claimant is currently an individual "closely approaching advanced age" (20 C.F.R. § 404.1563. Prior to age 50, he was a "younger individual."

10.   The claimant has a high school education (20 C.F.R. § 404.1564).

11.   The claimant has no transferable skills from skilled work previously performed.

12.   The claimant had, at least through August 2002, the residual functional capacity to perform a significant range of light work (20 C.F.R. § 416.967).

13.   Although the claimant's exertional limitations do not allow him to perform the full range of light work, considering his age, education, work experience, and determined residual functional capacity in view of the vocational expert's testimony, using Medical-Vocational Rules 202.21 (younger individual, high school education, non-transferable skills) and 202.14 (closely approaching advanced age), as frameworks for decision-making, there were significant number of jobs in the national economy that he could perform at least through August 2002. Examples of such jobs include work as an assembler, an inspector, a sorter, a welder inspector, or a scaler. These are unskilled jobs. Alternatively, the claimant would be capable of using the skills he learned in his past relevant work to transfer to sedentary work. Using the framework of medical-vocational rule 201.22 (younger individual ages 45-49, high school education, transferable skills) and 201.15 (closely approaching advanced age), there are a significant number of jobs in the national economy that the claimant could perform.

14.   Due to the claimant's increased alcohol abuse beginning

-10-

September 1, 2002, I find that beginning on that date, his residual functional capacity was reduced to such a limited level from intoxication, that he became incapable of performing any job existing in significant numbers in the national economy. Thus, since September 1, 2002, his alcohol abuse has been a contributing factor material to his disability.

15. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. § 404.1520(f)).

Although Manella requested a review of the second decision by the ALJ, the Appeals Council denied the request and certified the ALJ's decision as the final decision of the Commissioner. Manella then appealed to the United States District Court for the District of New Jersey, requesting that the Court reverse the final decision by awarding him DIB effective June 29, 1999, reasonable attorney fees, costs, and any other just relief.

II. STANDARD OF REVIEW

A court may review the factual findings of the Commissioner in disability cases to determine whether "substantial evidence" supports the Commissioner's finding that there is no disability.[6] Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate."[7] This substantial evidence "shall be conclusive" and

---

[6] 41 U.S.C. § 405(g); see also Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citing Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994)).

[7] Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Plummer, 186 F.3d at 427.

must be upheld, even if the record contains information that could support a different conclusion.[8]  Accordingly, the record in this case must be analyzed to assess whether substantial evidence supports the Commissioner's finding that Manella is not eligible for DIB.

The Commissioner applies a five-step sequential process to determine whether a person is eligible for DIB.[9]  If a finding of a disability or non-disability can be found at any point in the sequential process, the Commissioner will not review the claim further.[10]  The Claimant bears the burden of proof and must provide medical and other evidence to the Commissioner in order to pass the first four steps of the sequential analysis.[11]  The burden of proof only shifts to the Commissioner if the analytical process succeeds to the fifth and final step.[12]

The Commissioner starts the analysis by determining whether the claimant currently is employed in a "substantial gainful

---

[8] 42 U.S.C. § 405(g); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993); Alexander v. Shalala, 927 F. Supp. 785, 791 (D.N.J. 1995); see also Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

[9] See 20 C.F.R. §§ 404.1520, 416.920.

[10] See 20 C.F.R. §§ 404.1520(a), 416.920(a).

[11] See 42 U.S.C. § 423(d)(A), incorporated by 42 U.S.C. § 1382c(a)(3)(G); see Adorno, 40 F.3d at 46; Ferguson v. Scweiker, 765 F.2d 31, 36 (3d Cir. 1985); Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979).

[12] See Ferguson, 765 F.2d at 36; Rossi, 602 F.2d at 57.

-12-

activity."[13]  If not, the Commissioner proceeds to the second step to assess whether a "severe impairment" significantly limits the claimant's ability to work.[14]  If the claimant meets the listed criteria, then the Commissioner must conclude that the claimant is disabled and entitled to benefits, and the review ends.[15]  If the claimant's impairment is not in the Listing of Impairments, the Commissioner proceeds to step four to consider whether the claimant has the residual functioning capacity to meet the demands of her past employment.[16]  Finally, if the claimant cannot perform his past work, the Commissioner has the burden of proving that there is other substantial gainful employment that the claimant could perform.[17]

III. ANALYSIS

Manella contends that he is disabled by a severe psychiatric condition, but that the ALJ failed to give this condition serious consideration and weight in making his determination.  As evidence of the ALJ's error, Manella argues that the ALJ disregarded the SSA's own findings of a marked psychiatric impairment secondary to Manella's severe and documented physical maladies.

---

[13] See 20 C.F.R. §§ 404.1520(b), 416.920(b).

[14] See 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments").  20 C.F.R. §§ 404, 1520(d), 416.920(d).

[15] Id.

[16] See 20 C.F.R. §§ 404.1520(e), 416.920(e).

[17] See 20 C.F.R. §§ 404.1520(f), 416.920(f).

After reviewing the record, the Court finds that, in making the determination that Manella's impairments are not disabling, the ALJ gave serious consideration, and appropriate weight, to the objective medical evidence, as well as Manella's subjective allegations of limitation.

A.  <u>The ALJ Gave Serious Consideration and Appropriate Weight to the Objective Medical Evidence and Manella's Subjective Allegations of Limitation in Making the Determination that Manella's Impairments Are Not Disabling.</u>

The ALJ has a duty to develop a full and fair record in social security cases.[18] It is clear from the ALJ's decision that he understood what was required of him in the decision-making process and systematically considered the evidence on the record before him.  The ALJ correctly states that, in assessing the credibility of Manella's subjective allegation of limitations and pain, he is required to look at several factors, including Manella's daily activities; the location, duration, frequency, and intensity of Manella's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side effects of any pain medication; persistent treatment history; treatment, other than medication, for relief of pain; measures, other than treatment, for relief of pain or other symptoms; functional

---

[18] <u>See</u> <u>Ventura v. Shalala</u>, 55 F.3d 900 (3d Cir. 1995).

-14-

limitations and restrictions; and prior work records and efforts to work.

There is ample evidence in the ALJ's opinion that he properly evaluated Manella's allegations of limitations, as well as the objective medical evidence and the statements of his many attending and consulting physicians.  Upon remand, the ALJ sought, received, and considered additional information as he was directed to do by the Appeals Board.

The ALJ's opinion recognizes that, while Manella's assertions of pain and limitations would be reasonable to some degree, in light of the objective medical evidence submitted by his attending and consulting physician's which generally reports that Manella's heart and lung functions are within normal ranges,[19] Manella's assertions are not reasonable to the extent that he states.

In making his determination the ALJ considered Manella's physical and mental capabilities.  The ALJ considered that his physicians generally report that Manella is well nourished, well developed, and in no acute distress; he is capable of physical activities, such as walking; climbing several flights of stairs; driving; housekeeping chores; and, air travel to the Dominican Republic.  The ALJ also considered that Manella is not on medication to assist him with breathing, and, in light of the fact that he continues to smoke heavily, he tolerates well pollutants in

_____

[19]It is noted that Manella's lung functioning is beginning to show the effects of prolonged heavy smoking.

the air.  Considering Manella's claim that he suffers from a seizure disorder, the ALJ noted that Manella had two decompensation episodes only, he takes no seizure medication, and he continues to drive an automobile.

The ALJ considered that Manella's physicians generally report that he is capable of such mental activities as understanding, carrying out, and remembering instructions; concentrating on tasks; carrying on conversations; watching television; making and keeping appointments; using public transportation; managing his own finances; and maintaining a romantic relationship with a woman.  In addition, the ALJ considered that Manella gets along well with people and spends considerable time visiting with his fiancé at work.

The ALJ considered that, on the whole, the objective medical evidence consistently shows that, although Manella suffers from multiple medical conditions which are considered to be severe under 20 C.F.R. § 404.1520(b), none of them equal or exceed the listed impairments in Appendix 1, Subpart P.  The ALJ determined that the totality of the evidence does not support a finding of excessive mental limitation or physical disability.  Noting that Manella in no longer capable of performing the duties of his previous employment in the tile business, the ALJ correctly relied on the testimony of a vocational expert who identified numerous jobs that Manella can still perform given the limitations of his medical conditions.

Based on Manella's own admission that he is incapable of working because he consumes a quart of vodka every day,[20] the ALJ concluded that Manella's inability to work arises from his alcohol abuse, not his physical maladies.  Because Manella's inability to work arises solely from his alcohol abuse, the ALJ correctly states that Manella does not suffer a disability within the meaning of the Act pursuant to the 1996 Amendments.[21]  As a result of Manella's inability to work arising solely from his alcohol abuse, he is not eligible for benefits.

IV.  CONCLUSION

For the reasons set forth in this opinion, this Court **affirms** the Commissioner's decision to deny Manella benefits.    An appropriate Order accompanies this Opinion.


DATED:    March 10, 2006




/S/ WILLIAM G. BASSLER
William G. Bassler, U.S.S.D.J.


---

[20]It is noted that his finacé testified that Manella consumes **two** quarts of vodka daily.

[21] 42 U.S.C. § 423(d)(2)(C) states: "An individual shall not be considered disabled for purposes of this subchapter if alcoholism or drug addition would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."

-17-